## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| SEAN M. | : | |
| | : | |
| v. | : | No. 25-CV-4533 |
| | : | |
| FRANK BISIGNANO, | : | |
| Commissioner of Social Security | : | |

## O P I N I O N

SCOTT W. REID                                         DATE:  February 5, 2026
UNITED STATES MAGISTRATE JUDGE

Sean M. brought this action under 42 U.S.C. §405(g) to obtain review of the decision of the Commissioner of Social Security denying his claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI").  He has filed a Request for Review to which the Commissioner has responded.  As explained below, I conclude that the Request for Review should be denied and judgment entered in favor of the Commissioner.

I.      *Factual and Procedural Background*

Sean M. was born on April 7, 1977.  Record at 219.  He graduated from high school. Record at 276.  He worked in the past as a server and bartender.  Record at 277.  On September 2, 2022, he applied for DIB, and on September 14, 2022, he applied for SSI.  Record at 219, 226. In his applications, he alleged disability since January 2, 2022, on the basis of HIV, attention deficit hyperactivity disorder ("ADHD"), anxiety, depression, and bipolar disorder.  Record at 219, 226, 275.

Sean M.'s applications for benefits were denied on December 14, 2022.  Record at 73, 74.  They were denied again upon reconsideration on May 30, 2023.  Record at 79, 90.  Sean M. then sought review *de novo* by an Administrative Law Judge ("ALJ").  Record at 111.

A hearing was held in this matter on May 23, 2024.  Record at 31.  On July 11, 2024, however, the ALJ issued a written decision denying benefits.  Record at 14.  On June 10, 2025, the Appeals Council denied Sean M.'s request for review, permitting the ALJ's decision to stand as the final decision of the Commissioner for Social Security.  Record at 1.  Sean M. then filed this action.

II.    *Legal Standards*

The role of this court on judicial review is to determine whether the Commissioner's decision is supported by substantial evidence.  42 U.S.C. §405(g); *Richardson v. Perales*, 402 U.S. 389 (1971); *Newhouse v. Heckler*, 753 F.2d 283, 285 (3d Cir. 1985).  Substantial evidence is relevant evidence which a reasonable mind might deem adequate to support a decision.  *Richardson v. Perales*, *supra*, at 401.  A reviewing court must also ensure that the ALJ applied the proper legal standards.  *Coria v. Heckler*, 750 F.2d 245 (3d Cir. 1984); *Palmisano v. Saul*, Civ. A. No. 20-1628605, 2021 WL 162805 at *3 (E.D. Pa. Apr. 27, 2021).

To prove disability, a claimant must demonstrate that there is some "medically determinable basis for an impairment that prevents him from engaging in any 'substantial gainful activity' for a statutory twelve-month period."  42 U.S.C. §423(d)(1).  Each case is evaluated by the Commissioner according to a five-step process:

> (i) At the first step, we consider your work activity, if any.  If you are doing substantial gainful activity, we will find that you are not disabled.  (ii)  At the second step, we consider the medical severity of your impairment(s).  If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in §404.1590, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled.  (iii)  At the third step, we also consider the medical severity of your impairment(s).  If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled.

20 C.F.R. §404.1520(4) (references to other regulations omitted).

2

Before going from the third to the fourth step, the Commissioner will assess a claimant's

residual functional capacity ("RFC") based on all the relevant medical and other evidence in the

case record. *Id*. The RFC assessment reflects the most an individual can still do, despite any

limitations. SSR 96-8p.

The final two steps of the sequential evaluation then follow:

(iv) At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled. (v) At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work. If you can make the adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled.

*Id*.

III.    *The ALJ's Decision and the Claimant's Request for Review*

In her decision, the ALJ determined that Sean M. suffered from the severe impairments

of a history of HIV; bipolar disorder; depressive disorder; and ADHD. Record at 17. She found,

however, that no impairment, and no combination of impairments, met or medically equaled a

listed impairment. Record at 17-19. She specified that Sean M. was mildly limited in

understanding, remembering, or applying information; and moderately limited in interacting with

others; concentrating, persisting or maintaining pace; and adapting or managing himself. Record

at 18.

As to an RFC assessment, the ALJ wrote:

After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR §404.1567(c) and §416.967(c) except the claimant can never climb ladders, ropes, or scaffolds. He can never be exposed to unprotected heights or moving machinery but can be occasionally exposed to vibrations. The claimant can understand, remember, and carry out simple instructions. He can use judgment to make simple work-related decisions. He can have occasional interactions with the public, and frequent interactions with supervisors and co-

workers.  The claimant is limited to work involving occasional changes in the work setting.

Record at 19.

Relying upon the testimony of a vocational expert who appeared at the hearing, the ALJ found that Sean M. was unable to perform his past relevant work.  Record at 22.  He could, however, work in such occupations as dishwasher, cook helper, and laundry worker.  Record at 23.  She decided, therefore, that Sean M. was not disabled.  *Id*.

In his Request for Review, Sean M. challenges only those findings of the ALJ pertaining to his mental impairments.  He argues that the ALJ improperly formulated the mental specifications in the RFC based on her lay interpretation of the evidence, particularly questioning her distinction between his ability to interact with the public, and with supervisors and co-workers.  He also argues that the ALJ improperly assessed the opinion of psychiatrist, Daniel Buhalo, M.D.

IV.    *Discussion*

A.    *The RFC Assessment*

The state mental health consultants, John David Chiampi, Ph.D., and Kelly Lynne Roberts, Psy.D., who reviewed Sean M.'s records initially and upon reconsideration, respectively, both found that there was no evidence of any medically determinable impairment. Record at 71, 77, 83, 88.  The ALJ rejected these findings in light of the evidence of "mental health impairments with remarkable findings at times."  Record at 20.

However, the ALJ also found unpersuasive the finding of treating psychiatrist Daniel Buhalo, M.D., that Sean M. had marked limitations in understanding information and in concentration that would result in him being off-task from 11 to 20% of the workday, and would cause him to miss three or more days of work in a month.  Record at 21, 769-772.

4

According to Sean M., the ALJ's rejection of all the expert mental health opinions left her with no substantial evidence upon which to rely.  He argues, therefore, that her RFC is impermissibly based on her lay opinion only.

Sean M., however, ignores the fact that the record contains evidence other than medical opinions.  The ALJ is empowered to independently formulate an RFC based on "*all* of the relevant medical and other evidence."  20 C.F.R. §404.1545(a)(3) an §404.1546(c) (emphasis supplied).

Although Sean M. maintains that the ALJ "failed to explain how she formulated the RFC," in fact the ALJ explained that treatment notes from medical providers other than Dr. Buhalo "generally noted the claimant as alert, properly groomed, pleasant and cooperative with a normal mood, normal affect, normal behavior, intact attention, intact concentration, intact memory and – although distractible – he was also noted as easily redirectable."  Record at 21.  In support of this, the ALJ cited numerous treatment notes from Drexel Medicine Partnership Comprehensive Care, which included general practice and social work notes, some from a facilitated support group.  Record at 1139, 1144, 1160, 1164, 1166, 1175, 1189, 1196, 1209, 1222, 1230, 1266, 1320, 1648, 1899, 1902, 1913 and 1934.  She also cited an emergency room note which observed Sean M. to have normal behavior and mood.  Record at 21, 748.

The ALJ then wrote:  "In sum, the above residual functional capacity assessment is supported by treatment notes."  Record at 21.  Earlier in the decision, she also noted the absence of any inpatient psychiatric treatment during the relevant period.  Record at 20.  It is hard to see how much more clearly the ALJ could have explained how she formulated the mental health aspects of the RFC.

Sean M. also argues that the ALJ erred in failing to explain why she distinguished between his ability to interact with the public, and his ability to interact with supervisors and co-workers.  As above, the ALJ limited Sean M. to only occasional interaction with the public, but frequent (although not constant) interaction with co-workers and supervisors.  Record at 19. Sean M. also points out that finding him able to interact frequently with co-workers and supervisors is inconsistent with the ALJ's finding at stage two of the sequential evaluation that he was moderately limited in his ability to interact with others.  Record at 18.

Indeed, an RFC permitting frequent interaction is inconsistent with a finding that the claimant is moderately limited in his interaction with others.  However, the ALJ's RFC finding that Sean M. could interact frequently with supervisors is supported by Dr. Buhalo's report, which indicated that Sean M. had only mild limitations in the ability to "accept instructions and respond appropriately to criticism from supervisors."[1]  Record at 770.  It is also more limiting than the findings of the reviewing agency mental health experts, neither of whom believed that Sean M. had shown the existence of any medically determinable impairment.  Record at 77, 88. Because substantial evidence supported only a mild limitation in interacting with others, it is apparent that a remand for further discussion of the discrepancy in the ALJ's decision as to supervisors would not result in a decision favorable to Sean M.  Remand is not necessary where it would not affect the outcome of the case.  *Rutherford v. Barnhart*, 399 F.3d 546 (3d Cir. 2005).

As to the public, the RFC limitation imposed by the ALJ went beyond the other opinion evidence, since Dr. Buhalo indicated that Sean M. was only mildly limited (in Category II) in his

---

[1] The form completed by Dr. Buhalo utilized eight categories.  Category I is s defined as:  "Does not preclude performance of any aspect of the job." Category II is where Dr. Buhalo put Sean M.'s ability to interact with supervisors and the public:  "Precludes performance for less than 10% of an 8-hour workday."  This would therefore equate to a mild limitation.

ability to "interact appropriately with the general public." Record at 770. Clearly, remand to determine whether the ALJ's determination should have been *less* restrictive would not benefit Sean M.

The question which remains, therefore, is whether remand is necessary to explain how the ALJ concluded that Sean M. was capable of frequent interaction with co-workers, after finding that he had moderate limitations in his ability to interact with others, when such a finding is also inconsistent with Dr. Buhalo's indication that Sean M. was moderately limited in that respect (Category III: "Precludes performance from 11%-20% of an 8-work day"). Record at 770.

On these particular facts, remand is not necessary. Initially, I note that Sean M. has not pointed to specific evidence indicating that a more restrictive limitation is necessary. He cites authority suggesting that an ALJ should explain and provide support for any distinction between groups for the purposes of interaction. *See*, *e.g.*, *Lori O.S. v. O'Malley*, Civ. A. No. 23-3859, 2024 WL 3522190 at *7 (E.D. Pa. Jul. 24, 2024). However, he does not cite medical or other record evidence relevant to his ability – or lack thereof – to interact with co-workers.

The ALJ, on the other hand, cited the many treatment notes describing normal interactions with health care providers, and she particularly noted his "good contributions to group meetings." Record at 21, *citing* 748, 1139, 1144, 1160, 1164, 1166, 1175, 1189, 1196, 1209, 1222, 1230, 1266, 1320, 1648, 1899, 1902, 1913 and 1934. She did not, however, ignore the evidence that Sean M. had some abnormalities in his interactions with others, "frequently interrupting or interject[ing] when talking to his mental health provider at times." Record at 18. If she had not credited some evidence of psychologically-based symptoms, she would not have imposed any restriction upon Sean M.'s ability to interact with co-workers.

Therefore, although the ALJ's imposition of only a mild limitation in Sean M.'s ability to interact with co-workers could be called inconsistent with her stage two finding of a moderate limitation in interacting with others[2], it was nevertheless adequately supported by substantial evidence.  There is, therefore, no need to remand for further explanation.

B.  *Dr. Buhalo's Report*

As above, Dr. Buhalo was Sean M.'s treating psychiatrist.  He saw Sean M. for "medication management" between May 11, 2023 and July 31, 2023.  Record at 767, 942, 1664 ("Patient has been discharged.  Last seen 7/31/23").  His appointments with Sean M. were half-hour medication checks, after an initial one-hour evaluation.  Record at 931, 934, 942.

Dr. Buhalo submitted a Treating Medical Source Statement dated October 20, 2023.  Record at 767, 772.  In it, he listed Sean M.'s diagnoses as bipolar disorder, ADHD, and alcohol use disorder in remission.  Record at 767.  As to clinical findings, he reported:  "Mental status exam across visits has shown patient to be hyperverbal at times, frequently interrupting or finishing sentences, distractible."  *Id*.  He opined that Sean M. could not work full-time, attributing this to "impaired attention and concentration, racing thoughts, and distractibility," adding:  "Mood lability worsened by stressful situations."  *Id*.

As noted above, Dr. Buhalo indicated that Sean M. had Category III limitations, which would "preclude performance from 11 to 20% of the workday," in many concentration-related areas, such as maintaining regular attendance and punctuality, and sustaining an ordinary routine without special work in coordination with or proximity to others without interruptions from psychologically-based symptoms.  Record at 769.

---

[2] It is also possible to say that there was no error, since the ALJ did find that Sean M. was moderate limited in some aspects of interacting with others, i.e., the general public, and could not, therefore, have found him only mildly limited at stage two.  Record at 19.

Dr. Buhalo also found Sean M. to have Category III limitations in other areas, such as the ability to "get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes;" deal with normal work stress; and "be aware of normal hazards and take appropriate precautions."  Record at 770.  Notably, Dr. Buhalo also indicated that Sean M. had a Category IV limitation (precluding performance for more than 20% of an 8-hour workday) in his ability to complete a normal workday or workweek without interruptions from psychologically-based symptoms.

The ALJ found "unpersuasive" Dr. Buhalo's findings that Sean M. had marked limitations.  Record at 21.  Sean M. argues that the ALJ did not assess Dr. Buhalo's report in accordance with the relevant regulations.  In fact, however, the ALJ considered the persuasiveness of Dr. Buhalo's submission based on its internal supportability, its consistency with other evidence, and Dr. Buhalo's relationship with Sean M. (which includes consideration of the length of treatment, frequency of examination, and purpose of the treatment relationship), exactly as directed by 20 C.F.R. §404.1520c(c); 20 C.F.R. §416.920c(c).

As noted, the ALJ found that Dr. Buhalo's finding of marked limitations were inconsistent with records from other treatment practitioners who "generally noted the claimant as alert, properly groomed, pleasant and cooperative with a normal mood, normal affect, normal behavior, intact attention, intact concentration, intact memory and – although distractible – he was also noted as easily redirectable."  Record at 21, *citing* Record at 748, 1139, 1144, 1160, 1164, 1166, 1175, 1189, 1196, 1209, 1222, 1230, 1266, 1320, 1648, 1899, 1902, 1913 and 1934.

The ALJ also wrote that Dr. Buhalo's opinions were not entirely supported by his own treatment notes, where he observed that Sean M.'s mood issues were controlled by medication. Record at 21, *citing* 931 ("felt some improvement in his mood" with an increased dose of

Abilify); 932 ("patient partially responding to the current medication without side effects …

patient to pick up Strattera prescription"); 936 ("patient reports he has taken [Strattera]

successfully in the past").

Finally, the ALJ noted that Dr. Buhalo did not have a longstanding relationship with Sean

M., having seen him for "only five months." Record at 21. In fact, Dr. Buhalo only treated Sean

M. for three months. Record at 1664. Apparently, the Medical Source Statement was completed

after his discharge. In those three months, Dr. Buhalo saw Sean M. only six times, including his

intake assessment and the subsequent half-hour medicine checks. Record at 931 (July 31, 2023);

933 (June 27, 2023); 936 (June 5, 2023); 937 (June 2, 2023); 939 (May 11, 2023); and 941 (May

5, 2023).

The ALJ did note that the mental health treatment notes – both Dr. Buhalo's and those

from a clinical social worker at Drexel Medicine – contained numerous observations of Sean M.

"appearing tearful, anxious, depressed and distractable with pressured speech, circumstantial

thoughts, limited insight, limited judgment, limited attention, limited concentration and

diagnoses of bipolar II disorder and ADHD." Record at 20, *citing*, *e.g.*, Record at 1056, 1139,

1143-4, 1160, 1164, 1166, 1174-5, 1189, 1196. Accordingly, her RFC assessment contains

limitations designed to address Sean M.'s psychological symptoms. However, the ALJ also

found it relevant that Sean M. did not require psychiatric hospitalization or intensive outpatient

treatment during the relevant period. *Id*.

In summary, the record contains significant evidence of mental illness, but not all of it

supports Dr. Buhalo's more extreme limitations.[3] On the contrary, the ALJ's rejection of Dr.

---

[3] Dr. Buhalo's finding that Sean M. is moderately limited in his ability to "be aware of normal hazards and take appropriate precautions" is particularly puzzling. Record at 770. Nothing in the record indicates that Sean M. is so impaired that he would not, for example, realize that he could be burned by a hot stove, or slip on a wet floor.

Buhalo's findings of marked limitations is supported by substantial evidence.  Therefore, this Court cannot set her decision aside, even if the case could have been decided differently. *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999); *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cit. 1992).

*V.      Conclusion*

In accordance with the above discussion, I respectfully recommend that the Plaintiff's Request for Review be DENIED, and judgment entered in favor of the Commissioner.

BY THE COURT:

*/s/ Scott W. Reid*

_____
SCOTT W. REID
UNITED STATES MAGISTRATE JUDGE

11